UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

MICHAEL SARTISKY                              CIVIL ACTION

VERSUS                                        NO.  14-1125 c/w 15-883

LOUISIANA ENDOWMENT FOR                       SECTION "N" (5)
THE HUMANITIES

**ORDER AND REASONS**

Before the Court are three motions: Plaintiff Dr. Michael Sartisky's ("Sartisky") Motion for

Partial Summary Judgment (Rec. Doc. 130); Defendant Louisiana Endowment for the Humanities'

("LEH" or "the Endowment") Cross-Motion for Partial Summary Judgment (Rec. Doc. 133); and

the LEH's Motion for Partial Summary Judgment (Rec. Doc. 181). Having reviewed the parties'

briefs and applicable law, the Court rules as follows:

**I. Background**

This case arises from the LEH's termination of its President/Executive Director, Sartisky,

over allegations of sexual misconduct made by his colleagues. Beginning in 1982, Sartisky served

as the President/Executive Director of the Endowment for over three decades. His long tenure at the

helm of the LEH came to a head on December 27, 2013, when LEH Board Chairman, Dr. Michael

Bernstein ("Bernstein"), notified Sartisky that he had been accused him of sexual harassment by two

staff members. As a result, Sartisky was suspended, with pay, pending a third-party investigation

, which was conducted by Dione Huesel, who had been retained by the LEH. Completed as of

January 23, 2014, the report was subsequently reviewed by board members on the LEH Executive

Committee, who then unanimously recommended to the Board of Directors that Sartisky be

terminated. By a unanimous vote of a majority of its members, the Board affirmed the

recommendation to fire Sartisky "for cause due to misconduct constituting moral turpitude, misfeasance and/or malfeasance," notifying him of the decision by letter, dated February 11, 2014. (*See* Rec. Doc. 133-3 at p.22).

On May 16, 2014, Sartisky brought the instant lawsuit against the LEH, claiming that his termination as the LEH's President/Executive Director was improper, and alleging the following claims: breach of contract, bad faith breach of contract, abuse of rights, and unpaid wages. Sartisky then added a fifth claim in a First Supplemental and Amended Complaint, alleging age discrimination under the Louisiana Employment Discrimination Law ("LEDL"), which this Court dismissed on September 26, 2014. After that ruling, Sartisky filed a Second Supplemental and Amended Complaint, assserting an age discrimination claim under the Age Discrimination in Employment Act ("ADEA"). In total, Sartisky has five claims currently pending against the LEH.

## II. Summary Judgment Standard of Review

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). When cross motions for summary judgment are filed, the Court reviews the motions independently, with the proper evidentiary burdens and inferences applied to each. *See Indep. Turtle Farmers of La., Inc. v. United States*, 703 F.Supp.2d 604, 614 (W.D.La. 2010).

For a factual dispute to be considered "genuine" for purposes of summary judgment, the non-moving party must have presented evidence sufficient to allow a reasonable jury to return a verdict in his favor. *See Poindexter v. U.S. ex rel. Corps of Engineers*, 2008 WL 2743891, at *3 (W.D. La.

July 11, 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). If the moving party, who bears the initial burden, is able to show the absence of a genuine dispute, the burden shifts to the non-movant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial," *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553-54, 91 L.Ed.2d 265 (1986)). This burden cannot be satisfied by "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotations and citations omitted). Ultimately, after viewing all evidence in the light most favorable to the non-movant, *Smith v. City of Jackson*, 351 F.3d 183, 185 (5th Cir. 2003), and finding there to be no genuine issue of material fact, the Court may render summary judgment if one of the parties is entitled to prevail as a matter of law. *Shaw Constructors v. ICF Kaiser Engineers, Inc.*, 395 F.3d 533, 539 (5th Cir. 2004).

**III. Cross Motions for Partial Summary Judgment:  Breach of Contract**

    **1. Parties' Contentions**

    By filing cross motions for summary judgment, both parties seek resolution of Sartisky's breach of contract claim. The fate of this claim turns on a narrow issue: whether Sartisky was entitled to a pre-termination hearing under the terms of an employment contract (the "Employment Agreement" or "Agreement") between the parties. In material terms, the Agreement provides that Sartisky was to serve as the President/Executive Director for a term ending in October of 2015, after which time he would hold the title of President Emeritus and become Editor in Chief of two publications. In the event of termination prior to the natural end of the term, the Agreement allows:

> [T]erminat[ion] by either party with thirty (30) days written notice; provided that termination or removal of the President/Executive Director by the Endowment shall

be for cause in accordance with the by-laws of the LEH and as modified or specified by the term of this contract.

(*Id.* at p.2, ¶ 6).   The LEH By-Laws (the "By-Laws"), which are incorporated into the Agreement by reference, set forth a procedure for removing the President/Executive Director, stating:

> The written contract may be terminated by either party with thirty (30) days written notice, unless otherwise stipulated by the employment contract. Removal or termination of the contract of the President/Executive Director requires a recommendation for cause of the Executive Committee and a sixty (60) percent affirmative vote [seventeen Board members] of the entire Board membership of the Endowment.

(Rec. Doc. 130-5, at p.7, Art. V, § 9).[1]

Sartisky would have the Court read an additional provision of the By-Laws, Article IX, into the procedure for removing the President/Executive Director. Entitled "Grievance Procedure," Article IX provides:

> In the event of complaint not satisfactorily resolved by the Personnel Policies, the Executive Committee shall conduct a hearing. Their determination will be evaluated by the full Board before action is taken.

(Rec. Doc. 130-5, at p.11, Art. IX). The LEH did not have a personnel policy covering sexual harassment at the time, yet it did have one regarding procedure for the dismissal of the Executive Director. It reads in relevant part:

> Dismissal shall be defined as the termination of employment because of unsatisfactory conduct or job performance. In the case of the Executive Director, this procedure will be conducted in accordance with the By-Laws which state that action for dismissal be initiated by the Executive Committee and shall require a sixty (60) percent vote of the entire Board membership.

(Rec. Doc. 144-2 at p.2, ¶ 7).

---

[1]    Article V of the LEH By-Laws also contains a provision, Section 10, that provides the procedure for the orderly governance of the LEH in the event of an unplanned termination, resignation, or incapacity of the President/Executive Director.

4

Sartisky argues that complaints regarding his treatment, made during his suspension to Chairman Dr. Michael Bernstein ("Bernstein"), implicated Article IX. Though he never requested one, Sartisky claims that the LEH's failure to hold a pre-termination Executive Committee hearing constitutes a breach of the Agreement between the parties.

### 2. Law and Analysis

"When parties are bound by a valid contract and material facts are not in conflict, the contract's application to the case is a matter of law and summary judgment would be appropriate." *Boh Bros. Constr. Co., L.L.C. v. State ex rel. Dep't of Transp. & Dev.*, 08-1793, p.3 (La.App. 1 Cir. 3/27/09); 9 So.3d 982, 985 (citing *Ginger Mae Financial Services, L.L.C. v. Ameribank, FSB*, 2002-2492, p.4 (La.App. 1 Cir. 9/26/03) 857 So.2d 546, 548). A contract establishes the law between contracting parties, and interpretation of the contract is a task in determining their mutual intent. *See Boh Bros. Construction Co., L.L.C*, 9 So.3d at 984; La. Civ. Code art. 2045. Generally, the meaning and intent of contracting parties is  determined within the four corners of the instrument, the terms of which should not be explained or contradicted by extrinsic evidence. *RJAM, Inc. v. Miletello*, 45, 176 (La.App. 2 Cir. 4/14/10); 44 So.3d 283, 286.  Separate documents, however, may  be incorporated into a contract by attachment or reference thereto. *Reid v. Summit Claiborne, LLC*, 2013 WL 486783, at *3 (E.D.La. Feb. 6, 2013).  When the terms of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in the search for the parties' common intent.  La. Civ. Code art. 2046.  "The rules of interpretation establish that, when a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit." *Boh Bros. Construction Co., L.L.C*, 9 So.3d at 985 (citing La. Civ. Code art. 2046, comment (b)).  Moreover, specific terms take precedence over general

provisions. *Boh Bros. Construction Co., L.L.C*, 9 So.3d at 985. Thus, when two unambiguous terms conflict, deference is paid to the more specific term. *SynchroPile, Inc. v. Traylor Bros, Inc.*, 2011 WL 3419630, at *5 (E.D.La. Aug. 3, 2011) (citing *Barkley Estate Community Ass'n, Inc. v. Huskey*, 30 So.3d 992, 998 (La.App. 5 Cir., 2010)); *see also Texas Eastern Transmission Corp. v. Amerada Hess Corp.*, 145 F.3d 737, 743 (5th Cir. 1998) ("[A] contract is ambiguous, under Louisiana law, when it is uncertain as to the parties' intentions and susceptible to more than one reasonable meaning under the circumstances and after applying established rules of construction.").

Applying the foregoing principles of contract interpretation to the present case, the Court finds that there are no contradictions or ambiguities in the Agreement or the By-Laws, which are incorporated therein by reference. Article V ("Officers"), Sections 8-10 of the By-Laws provide the roles and responsibilities of the President/Executive Director and the procedures for his termination, resignation, or incapacitation, whether planned or unplanned. Specifically, Section 9 sets forth three specific requirements for terminating the President/Executive Director, including: thirty (30) days written notice of termination; a recommendation for cause of the Executive Committee; and a sixty (60) percent affirmative vote of the entire Board membership. In this detailed section, there is no reference to Article IX and its requirement for an Executive Committee hearing, or to any other provision. Rather, Article IX is more appropriately construed as a general grievance procedure, designed as a catch-all to the LEH's Personnel Policies.[2] Its inapplicability to the removal procedures for the President/Executive Director is further supported by the brevity of the provision and its

---

[2]     Section 7 ("Resignation and Dismissal") of the Personnel Policies touches upon the termination procedures for the President/Executive Director by briefly tracking language found in Article V, Section 9 before redirecting the reader to the By-Laws. It then proceeds to detail dismissal procedures for employees other than the President/Executive Director.

location on the second to last page of the By-Laws. This conclusion is also reinforced by Section 7 of the Personnel Policies, discussed *supra*, which sets forth a dichotomy of termination procedures for the Executive Director and employees, referring the reader to the By-Laws for the former after briefly tracking the language found in Section 9 of By-Law Article V. As Sartisky does not dispute that the LEH complied with the termination requirements contained in Article V, Section 9, the Court grants LEH's, and denies Sartisky's, Cross Motion for Partial Summary Judgment, thereby dismissing the breach of contract claim with prejudice.

## IV. The LEH's Motion for Partial Summary Judgment

The LEH's second Motion for Partial Summary Judgment seeks the dismissal of Sartisky's remaining claims of bad faith breach of contract, abuse of rights, age discrimination, and unpaid wages. For the reasons stated herein, the LEH's motion is granted in part and denied in part, whereby Sartisky's bad faith breach of contract, abuse of rights, and age discrimination claims are dismissed with prejudice. The motion is denied as to Sartisky's claim for unpaid wages.

### 1. Bad Faith Breach of Contract

Louisiana law requires contracts to be performed in good faith. La. Civ. Code art.1983. The Code does not expressly define "good faith" but does describe "bad faith" as "an intentional and malicious failure to perform." La. C.C. art. 1997, Comment (b). Bad faith requires finding "more than mere bad judgment or negligence, it implies the conscious doing of a wrong for dishonest or morally questionable motives." *MKR Servs., L.L.C. v. Dean Hart Const., L.L.C.*, 44, 456 (La. App. 2 Cir. 7/8/09), 16 So. 3d 562, 566. Louisiana courts analyze the performance of a contract in terms of "bad faith" and "good faith," with no middle ground. *Woman's Hosp. Found. v. Nat'l Pub. Fin. Guar. Corp.*, 2012 WL 956622, at *4 (M.D.La. Mar. 20, 2012) (citing *Cope v. CitiMortgage, Inc.*,

2010 WL 4976868. at *3 (W.D.La. Dec. 1, 2010)). If the actions of a party are permitted under the express terms of the agreement, "that party cannot as a matter of law be acting in breach of the implied covenant of good faith and fair dealing." *Woman's Hosp. Found.,* 2012 WL 956622, at *4 (citing *Amoco Prod. Co. v. Texas Meridian Resources Exploration Inc.*, 180 F.3d 664, 669-70 (5th Cir. 1999); *Clark v. America's Favorite Chicken Co.*, 110 F.3d 295, 298 (5th Cir. 1997)). Here, the Court has determined that the failure to hold an Executive Committee hearing did not constitute a breach of contract. Therefore, because the LEH's actions were permitted, Sartisky's bad faith breach of contract claim is similarly dismissed with prejudice.

### 2. Abuse of Rights

Under Louisiana law, the "abuse of rights" doctrine applies to the exercise of a contractual right only when one of the proceeding four conditions is met: (1) the predominant motive for the exercise of the right is to cause harm; (2) there is no serious or legitimate motive for the exercise of the right; (3) the exercise of the right violates moral rules, good faith, or elementary fairness; or (4) the exercise of the right is for a purpose other than that for which it was granted. *Steier v. Heller*, 31, 733 (La. App. 2 Cir. 5/5/99), 732 So. 2d 787, 791 (internal citations omitted). This doctrine has been invoked sparingly in Louisiana, as its application strips a party of rights that are otherwise judicially protected. *Gallien v. Gott*, 2008 WL 821643, at *2 (W.D.La. Mar. 27, 2008). As long as a party has a legitimate and serious interest for exercising a contractual right, "he may do so even if it causes harm to another." *Woman's Hosp. Found. v. Nat'l Pub. Fin. Guar. Corp.*, 2012 WL 956622, at *5 (M.D.La. Mar. 20, 2012); *see Brumley v. Leam Investments, Inc.*, 2012 WL 525474, at *19 (W.D.La. Feb. 16, 2012) ("[F]or the abuse of right doctrine to apply, the holder of an individual right must exercise that right to the detriment of another simply for the sake of exercising

it."). It is when no valid motive exists for the exertion of a contractual right, and unnecessary harm to another would result, that the abuse of rights doctrine operates to bar the exercise of that right. *Woman's Hosp. Found.*, 2012 WL 525474, at *19 (citing *Massachusetts Mut. Life Ins. Co. v. Nails*, 549 So.2d 826, 829 (La. 1989)).

In the present case, Sartisky relies on conclusory allegations and unwarranted deductions of fact to make out an abuse of rights claim. Among the chief accusations made by Sartisky in support of his claim are that his ouster was orchestrated by his heir apparent, Miranda Restovic, and other disgruntled colleagues, and that Dione Heusel's ("Heusel") investigation was both conflicted and flawed. Other than conflicting accounts on which of Sartisky's three accusers orchestrated a meeting with Restovic to apprise her of their complaints, there is no more than a scintilla of evidence, all of which is circumstantial, that Restovic conspired with the accusers to concoct damaging allegations in a concerted effort to overthrow Sartisky – either for Restovic's personal gain or to protect the Endowment from financial ruin. Moreover, assuming *arguendo* that Heusel's report was flawed, either in substance or on account of some rather remote, and inconsequential, connection between Heusel and LEH Board Member Cleland Powell, there is no evidence that the Endowment's decision makers – the Executive Committee and the larger Board of Directors – acted unreasonably in relying on it as a basis for terminating Sartisky.[3] Ultimately, Sartisky falls well short of creating a genuine dispute concerning the intent and motive behind his termination and whether it violated moral rules,

---

[3]     In addition to the three complainants, Heusel interviewed six other persons during the course of her investigation who were identified by the complainants as witnesses. All of these persons corroborated their accounts of misconduct. Heusel also spent a total of five hours interviewing Sartisky and permitted him to submit and revise a written statement. Ultimately, Heusel arrived at the unequivocal recommendation that Sartisky be fired, after finding it apparent that "his behavior ha[d] been a pattern and practice for at least 15 years, possibly longer," and that Sartisky could not be "rehabilitated."

good faith, or elementary fairness. Accordingly, his abuse of rights claim is dismissed with prejudice.

### 3. Age Discrimination

"Under the ADEA, it is unlawful for an employer 'to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.'" *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 349–50 (5th Cir.2005) (quoting 29 U.S.C. § 623(a)(1)) (internal quotation marks omitted). When an employee-plaintiff relies only on circumstantial evidence to make out an alleged violation of the ADEA, the claim is analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as applied in *Machinchick*, 398 F.3d at 350. Pursuant to the modified *McDonnell Douglas* approach, the initial burden is on the plaintiff to make a prima facie showing of discrimination. *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005); *Rachid*, 376 F.3d at 312. To satisfy this burden, the plaintiff must show that (1) he was discharged; (2) he was qualified for his job; (3) he was  within a protected class at the time of his discharge; and (4) he was either replaced by someone outside his protected class, replaced by someone younger, or otherwise discharged because of his age. *Kean v. Jack Henry & Assoc., Inc.*, 2014 WL 3894267, at *6 (5th Cir. Aug. 11, 2014).

If the plaintiff makes this *prima facie* showing, the burden shifts to the employer to articulate a legitimate nondiscriminatory reason for the challenged discharge. *Id.* Upon production of such evidence, the presumption of discrimination created by the plaintiff's *prima facie*

case dissolves, and the burden returns to the plaintiff "to prove either that the employer's proffered reason was not true—but was instead a pretext for age discrimination—or that, even if the employer's reason is true, he was terminated because of his age." *Id.* (citing *Jackson v. Cal–Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010)).

In this case, it is beyond dispute that Sartisky has alleged a *prima facie* showing of age discrimination, as he was terminated, qualified, forty years or older (and thus within the class protected by the ADEA) and replaced by a younger person. In turn, the LEH has not only identified a legitimate reason for the termination – findings of serious workplace misconduct – but it has also provided overwhelming evidence in support of its veracity.[4]  The question on summary judgment, therefore, is whether Sartisky has created a genuine issue of material fact as to whether this reason was pretextual.

Pretext may be shown "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence. But a reason cannot be proved to be a 'pretext *for discrimination*' unless it is shown both that the reason was false, and that discrimination was the real reason." *Kean*, 2014 WL 3894267, at *6 (citing *Holliday v. Commonwealth Brands, Inc.*, 483 Fed.Appx. 917, 921 (5th Cir.2012) (emphasis in original). Ultimately, the Supreme Court has clarified that "a plaintiff must prove that age was the but-for cause of the employer's adverse decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009).

There being little if any evidence of a discriminatory motive on behalf of the LEH decision

---

[4]  The evidence shows that three female colleagues accused Sartisky of sexual misconduct; that a third-party investigator compiled a written report recommending the firing after she interviewed ten employees, including Sartisky; and that the ultimate decision to terminate was made by a unanimous vote of the majority of the Endowment's board members.

makers, *e.g.*, the Board of Directors, which was composed of predominately the same members who awarded Sartisky a contract extension roughly three months prior, Sartisky invokes the "cat's paw" theory of liability in an attempt to impute to the Board the alleged discriminatory animous of his successor, Restovic.  Under a "cat's paw" analysis, "[i]f the employee can demonstrate that others had influence or leverage over the official decisionmaker, and thus were not ordinary co-workers, it is proper to impute their discriminatory attitudes to the formal decisionmaker." *Roberson v. Alltel Information Services*, 373 F.3d 647, 653 (5th Cir. 2004) (quoting *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir. 2000).[5]  The cat's paw theory requires Sartisky to "submit evidence to establish two conditions: (1) that a co-worker exhibited discriminatory animous, and (2) that the same co-worker "possessed leverage, or exerted influence, over the titular decisionmaker." *Roberson*, 373 F.3d at 653 (internal citation omitted).

In support of his contention that Restovic influenced the Board with an improper age based animus, Sartisky relies on two pieces of evidence. First, he submits the affidavit of a former employee, Adrienne McFaul Ahmad, who attests to the general content of a conversation that presumably occurred some time prior to June, 2012,[6] between Restovic and another LEH employee, Romy Mariano. During that conversation, the former employee recalls overhearing Restovic "vigorously express[ ] hostility and animosity toward 'baby boomers. '" Though he is indeed a baby boomer, Sartisky was not the subject of this remark, which occurred well over a year before he was

_____

[5] Though the application of the "cat's paw" theory to ADEA claims is questionable, *see Holliday v. Commonwealth Brands, Inc.*, 483 Fed. Appx. 917, 922 n. 2 (5th Cir.2012) (per curiam), the Court will assume *arguendo* that it applies in light of the summary judgment ruling against Sartisky on this claim.

[6] The former employee, Ms. Ahmad, employment with the LEH ended in June of 2012.

12

suspended and fired. As such, the Court finds that this comment alone, assuming it was indeed made, holds little probative value on the issue of Restovic's animus.

The second piece of evidence that Sartisky relies upon is the termination of two employees that occurred shortly after Restovic gained operational control of the Endowment. Sartisky describes the dismissal of these employees as Restovic's firing of  "all of the full-time males over 55." The LEH refutes that these dismissals were improperly motivated, arguing that they were made as part of a reduction-in-force ("RIF") due to the Endowment's budgetary shortfalls at the time. This explanation is bolstered by the record, which contains multiple exhibits wherein Sartisky himself admits to the fiscal distress of the Endowment. (Rec. Doc. 181-2 at p.22). For example, in a letter to Chairman Bernstein, dated December 27, 2013, Sartisky stresses potential "draconian budget adjustments" facing the LEH, including "possible cuts in staffing due to fiscal exigency." (Rec. Doc. 181-3 at p. 49; *see also* Rec. Doc. 181-2 at p.22).  Given the Endowment's documented fiscal trouble, and the lack of probative evidence on the mindset of Restovic, the Court finds that Sartisky has failed to show the presence of a genuine dispute concerning the reason for Sartisky's firing, much less that it was motivated by a discriminatory animous, imputed or not. This conclusion is further supported by the sequence of events, in that the unanimous decision to terminate Sartisky was made by a majority of the board members who relied on the recommendation of a report prepared by a third-party investigator after interviewing ten LEH employees, including the three complainants and Sartisky. As the evidence is insufficient to permit a reasonable factfinder to infer intentional discrimination on behalf of Restovic or the Board, Sartisky's age discrimination claim is hereby dismissed with prejudice.

13

### 4. Unpaid Wages

An unpaid wages claim made pursuant to the Louisiana Wage Payment Act, La. R.S. § 23:631, *et seq.*, requires: (1) wages due and owing; (2) a demand for payment made at the place where the employee was usually paid; and (3) failure of the employer to pay following the demand. *Phi, Inc. v. Office & Professional Employees Intern. Union*, 2010 WL 3905084, at *14 (W.D.La. Sept. 27, 2010) (citing *Jackson v. Housing Authority for Parish of St. James*, 926 So.2d 606, 611 (La.App. 5th Cir.2006).

It is undisputed that Sartisky made a demand for payment by letter, dated March 28, 2014. In the letter, Sartisky demands $132, 745 from the LEH for wages claimed due and owing. (Rec. Doc. 181-3 at p.39). This amount reflects 149 days of leave, totaling $123,653, and $9,092 in fringe. While the LEH may have compensated Sartisky after receiving his letter, it is uncontested that Sartisky's full demand has not been met to date. Moreover, attached to the demand letter was a spreadsheet displaying Sartisky's calculations, to which he attests were based upon official LEH documents provided to him by the Director of Administration, Warren Meyer, who was in charge of all LEH internal accounting functions. The LEH, however, argues that an accounting audit that took place after the termination indicated that the Sartisky had actually accrued *negative* 142.25 leave days, due to excessive absences.[7] The accuracy and completeness of this audit is debated by the parties, both of whom have presented conflicting evidence. The Court, therefore, finds that a genuine issue of material fact exists as to the amount due and owing between the parties. Therefore, summary judgment on Sartisky's unpaid wages claim is denied.

---

[7] The LEH filed a separate lawsuit, 2:15-cv-883, seeking in part recovery of overpayments made to Sartisky on account of excessive leave. The two lawsuits have since been consolidated.

## V. Conclusion

For the aforementioned reasons, **IT IS ORDERED** that the LEH's Cross-Motion for Partial Summary Judgment (Rec. Doc. 133) is **GRANTED**, such that Sartisky's breach of contract claim is hereby dismissed with prejudice. **IT IS FURTHER ORDERED** that Sartisky's Motion for Partial Summary Judgment (Rec. Doc. 130) is **DENIED**.

**IT IS FINALLY ORDERED** that the LEH's Motion for Partial Summary Judgment (Rec. Doc. 181) is **GRANTED IN PART** to the extent that Sartisky's claims of bad faith breach of contract, abuse of rights, and age discrimination claims are hereby dismissed with prejudice. The Motion is **DENIED IN PART** to the extent that Sartisky's unpaid wages claim has survived summary judgment.

New Orleans, Louisiana, this 2nd day of December, 2015.

**KURT D. ENGELHARDT**
**United States District Judge**